IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DOUGLAS A. RYDBERG,<br><br>                        Plaintiff,<br><br>        vs.<br><br>PARTY UNIDENTIFIED (PHARMACY) NEBRASKA DEPARTMENT CORRECTION SERVICES, Pharmacist; DR. JERRY LEE LOVELACE JR., Director Nebraska Department Correction Service; DR. LARRY WIDMAN, MD-Psycictrist; and AMANDA SMITH, Telepsych Manager- Psyciatrist Assistant;<br><br>                        Defendants. | **8:25CV234**<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff Douglas A. Rydberg ("Rydberg"), a state prisoner currently incarcerated at the Omaha Correctional Center in Omaha, Nebraska, has been granted leave to proceed in forma pauperis. Filing No. 7. Because he has paid the required initial partial filing fee, the Court conducts an initial review of Rydberg's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A. Also before the Court are Rydberg's several Motions to Appoint Counsel, Filing No. 6, Filing No. 9, and Filing No. 10. Rydberg includes a Motion for Status within his Motion at Filing No. 9. With this Memorandum and Order, the Court grants the Motion for Status. The remaining matters are addressed below.

## I.  SUMMARY OF COMPLAINT

Rydberg, sues seven named defendants: an unidentified Nebraska Department of Correctional Services ("NDCS") pharmacist; Dr. Jerry Lee Lovelace Jr., identified as

"Director"[1] of NDCS; Dr. Larry Widman, identified as an MD-Psychiatrist with NDCS; Amanda Smith, identified as a "telepsych manager"/psychiatrist assistant with NDCS; Dr. Robert Cunard, identified as a medical doctor; Kristal Turpen, a nurse practitioner; and L. Bo, another nurse practitioner. Filing No. 1 at 2-3, 19. Each Defendant is identified as an employee of NDCS, and each is sued in his or her individual and official capacity. *See id*. Rydberg also seeks the right to add defendants in the future as evidence is uncovered. *Id.* at 19.

Rydberg has been diagnosed with F4 liver cirrhosis and restless leg syndrome ("RLS"). *Id.* at 5. Rydberg, in general, alleges he has been denied access to specialists, adequate diagnostic testing, and meaningful treatment. *Id.* He alleges "they" refuse to let Rydberg be treated by anyone but nurse practitioners. *Id.* Rydberg makes specific allegations against each of the named Defendants. Rydberg claims the unidentified pharmacist administered the wrong medication around February 6, 2024. *Id.* at 13. Rydberg gave the medical department two opportunities to correct the error before filing a grievance. *Id.*

Dr. Lovelace, as Director, refused to authorize specialists such as a neurologist, a hepatologist, and a gastrointestinal physician. *Id.* Dr. Lovelace also denied Rydberg's requests for MRIs, CT scans, and other relevant testing. *Id.* Dr. Lovelace also refused to offer dietary modifications or common supplements to address Rydberg's liver condition. *Id.* at 13-14. Rydberg alludes to being prescribed a high dose of ibuprofen, but he does not allege that Dr. Lovelace prescribed it. *See id.* at 14. Rydberg states that Dr. Lovelace agreed with an Inspector General investigation that found that high-dose

---

[1] The Court takes judicial notice that Dr. Lovelace is listed on the NDCS website as the "Medical Director." *See* https://corrections.nebraska.gov/jerry-lee-lovelace-jr-md-phd (last visited, March 23, 2026).

2

ibuprofen had been wrongly prescribed but Dr. Lovelace has, nevertheless, failed to provide meaningful medical support. *Id.* at 16. Rydberg filed grievances but asserts that Dr. Lovelace failed to meet grievance response deadlines on multiple occasions. *Id.* at 13.

Rydberg alleges Dr. Widman, the NDCS psychiatrist, refused to prescribe psychiatric medication that had worked with Rydberg in the past. *Id.* at 14-15. Dr. Widman also declined to honor Rydberg's right to confidential sessions. *Id.* at 16. Rydberg also broadly alleges that Dr. Widman's unwillingness to treat Rydberg's long-term mental illness was unprofessional and constituted medical malpractice. *Id.*

Rydberg alleges that Amanda Smith, a registered nurse and the telepsych manager, refused to respect Rydberg's right to confidentiality during psychiatric appointments. *Id.* at 15. Rydberg does not explain what Smith does to violate Rydberg's privacy rights but asserts that her interference affects his appointments and those of others in the institution. *Id.* at 15, 18.

Rydberg claims that Dr. Cunard repeatedly lied to Rydberg about being on a Hepatitis C treatment list. *Id.* at 15. Dr. Cunard allowed Rydberg to continue high-dose ibuprofen, even though Dr. Cunard knew Rydberg was a chronic care patient. *Id.* at 15. Rydberg also alleges Dr. Cunard refused to properly treat Rydberg's RLS by prescribing Propranolol rather than an RLS-specific medication. *Id.* This caused Rydberg irreversible harm, *Id.* at 17, though Rydberg does not specify what the harm was.

Nurse Practitioner Kristal Turpen "had a part" in prescribing 1600 mg of ibuprofen. *Id.* at 15. This caused severe and excessive liver damage. *Id.* Nurse Practitioner L. Bo "tried arguing" that Rydberg could take Propixamate, a medication known to raise liver

3

enzyme levels. *Id.* at 17.  Rydberg alleges that this could have caused him severe harm due to his cirrhosis. *Id.*  Rydberg characterizes L. Bo's actions as malpractice and beyond her scope as a nurse practitioner. *Id.* at 15, 17.

Rydberg claims there were other individuals involved, such as a deputy warden, a nurse, and other medical staff, that mishandled his case. *Id.* at 17.  Rydberg claims he was given the wrong medication, and that other medical staff refused to treat Rydberg's long-term case of hepatitis C. *Id.* at 18.  Rydberg also alleges that another employee consistently advised Rydberg to take Tylenol and aspirin for his headaches, which could have been harmful to an F4 cirrhosis patient. *Id.*

Construed liberally, Rydberg asserts § 1983 claims based on Eighth Amendment deliberate indifference to serious medical needs, medical malpractice and negligence, HIPAA violations, violation of the ADA Amendments Act of 2008, and failure to follow NDCS policy and procedure. *Id.* at 12-13.  Rydberg seeks $1 million for lost wages over approximately 20 years, given his slim chance of survival; $250,000 for pain and suffering; $500,000 for a future liver transplant; removal and license suspension of the responsible providers; a $200,000 fund for inmate health and mental health issues; and $250,000 for violation of his rights. *Id.* at 5.

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks

4

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

5

### III. DISCUSSION

**A. Official Capacity Claims**

Rydberg sues each Defendant in both his or her individual and official capacity. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacities. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Moreover, states and state employees sued in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983 and are not suable under the statute regardless of the forum. *See Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991); *see also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under section 1983). Because Rydberg seeks only monetary relief, and there is nothing in the record showing that Nebraska waived, or that Congress overrode, sovereign immunity, Rydberg's official capacity claims for money damages are barred by the Eleventh Amendment and must be dismissed.

**B. Individual Capacity Claims**

Construed liberally, Rydberg's Complaint asserts § 1983 claims against Defendants in their individual capacities for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Langford v. Norris,*

614 F.3d 445, 460 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.") (quotations omitted). In other words, to establish an Eighth Amendment claim for deprivation of medical care, an inmate must allege that a prison official was deliberately indifferent to the inmate's serious medical needs. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

Deliberate indifference "is a stringent standard of fault, requiring proof that a [government] actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). It is "equivalent to criminal-law recklessness, which is more 'blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate.'" *Id*. at 914-15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Differences of opinion, mistakes, and even medical malpractice do not meet this exacting standard. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Additionally, to state a valid § 1983 claim, a plaintiff must provide factual allegations describing how each defendant was directly responsible for or personally involved in actions that deprived him of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

A claim of deliberate indifference to medical needs is described as carrying both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This requires a two-part showing: "(1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Id*. (internal quotations and citations omitted). The Court considers whether Rydberg has

7

alleged an objectively serious medical need and whether he states a plausible claim that each Defendant knew of the need and deliberately disregarded it.

### 1. Objective Component

For purposes of initial review, the objective component of Rydberg's deliberate indifference claim is satisfied. "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Schaub*, 638 F.3d at 914 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995)). Rydberg alleges he has been diagnosed with F4 (Stage 4) liver cirrhosis, Hepatitis C, and restless leg syndrome. Filing No. 1 at 5. Courts have recognized Hepatitis C as a serious medical need. *See Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004); *Clay v. Corizon Health LLC*, No. 4:21CV877, 2021 WL 4963520, at *5 (E.D. Mo. Oct. 26, 2021). Rydberg also alleges that, because his liver condition has gone untreated, he faces a significantly diminished chance of survival and may require a liver transplant. Filing No. 1 at 5. The Court concludes that, for the purposes of initial review, the objective component is met.

### 2. Subjective Component and Personal Involvement

The subjective element requires Rydberg to plead that each defendant acted with a sufficiently culpable state of mind. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). The Court considers whether Rydberg's allegations satisfy the subjective component as to each named Defendant, and whether Rydberg has alleged each Defendant's personal involvement in the alleged deprivation.

### a. The Unidentified Pharmacist (Defendant No. 1)

As an initial matter, generally, a plaintiff may not name fictitious parties as defendants in a lawsuit. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). But dismissal of fictitious parties is only appropriate "when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). An action may proceed against a fictious party so long as the complaint makes "allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Est. of Rosenberg by Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *see also Salinas v. Clark*, No. 1:22-CV-159, 2023 WL 2345998, at *4 (E.D. Mo. Mar. 3, 2023) (permitting claims to proceed because plaintiff made specific allegations against John Doe defendants) (citing *Rosenberg*, 56 F.3d at 37).

For purposes of initial review, the Court will consider the allegations against the unnamed pharmacist. Rydberg alleges the unidentified NDCS pharmacist administered the wrong medication around February 6, 2024, and that Rydberg gave the medical department two opportunities to correct the error before filing a grievance. Filing No. 1 at 13. The response to that grievance acknowledged that the medication card was incorrectly labeled and encouraged Rydberg to continue to work with the NDCS medical staff. *Id.* at 43. Rydberg's allegation, standing alone, sounds in negligence or mistake rather than deliberate indifference. *See Jones*, 310 F.3d at 612. Moreover, a single labeling error that was ultimately corrected does not plausibly allege that the pharmacist knew of a substantial risk of serious harm to Rydberg and deliberately disregarded it. Accordingly, Rydberg has failed to state a claim against the unidentified pharmacist.

9

### b. Dr. Jerry Lee Lovelace Jr. (Defendant No. 2)

Rydberg alleges that Dr. Lovelace, as Director of NDCS, refused to authorize specialist referrals, denied requests for MRIs and CT scans, and failed to provide dietary support or supplements for Rydberg's liver condition. Filing No. 1 at 13-14. Rydberg also alleges that Dr. Lovelace agreed with an Inspector General's finding that high-dose ibuprofen was wrongly prescribed but still provided no meaningful medical support. *Id.* at 16. Finally, Dr. Lovelace repeatedly failed to meet grievance response deadlines. *Id.* at 13.

As noted below, Rydberg's allegations that Dr. Lovelace failed to meet grievance deadlines on some occasions do not plausibly allege a constitutional violation. Moreover, the numerous grievance records attached to the Complaint reflect that Dr. Lovelace responded substantively to multiple grievances. *See, e.g.,* Filing No. 1 at 22, 31. His responses include explanations of the treatment approach and information about the progression of liver disease. See *id.* at 22. Dr. Lovelace also acknowledged Rydberg's Hepatitis C concern and stated that treatment would begin within one to three weeks following lab work. *Id.* at 31. Rydberg's allegations about Dr. Lovelace's responses reflect a disagreement about the course of medical care rather than deliberate disregard of a known serious need. *See Jones*, 310 F.3d at 612; *see also Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 389 (8th Cir. 2014) (conservative treatment approach, even if medical malpractice, does not necessarily constitute deliberate indifference). Rydberg's other allegations lack factual support to state a plausible claim. For example, no facts describe how Dr. Lovelace's response to the finding on the high-dose ibuprofen amounted to deliberate indifference, and no facts suggest that Dr. Lovelace knew the requested tests

10

were medically necessary and still failed to act.  Accordingly, Rydberg has failed to state a claim against Dr. Lovelace.

### c. Dr. Larry Widman (Defendant No. 3)

Rydberg alleges that Dr. Widman, his NDCS psychiatrist, refused to prescribe psychiatric medication that had worked for Rydberg in the past and declined to provide confidential sessions. Filing No. 1 at 14-15.  A treating provider's decision not to prescribe a particular medication, even one previously prescribed, is a treatment decision that does not rise to the level of deliberate indifference absent allegations suggesting the decision was made in disregard of a known, serious risk.  *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997) (noting that absent deliberate indifference, inmates do not have a right to receive a specific or desired course of treatment); see also *Cooke v. Stanton*, No. 08-1175, 2009 WL 424537, at *5–6 (D.Minn. Feb. 18, 2009) (prisoner's allegations that his doctors deliberately disregarded his serious medical need when they discontinued previously prescribed medications was merely a disagreement over treatment decisions, which is not sufficient to establish a deliberate indifference claim).

Rydberg's allegations do not suggest anything more than a disagreement over treatment.  Dr. Widman's response to Rydberg's grievance on this issue reflects that Dr. Widman's treatment decisions fell within his clinical judgment as Rydberg's psychiatrist, and that nonformulary medications remained available if justified by an acceptable rationale. Filing No. 1 at 23.  Rydberg's broad characterization of Dr. Widman's conduct as unprofessional and his disagreement with Dr. Widman's medication choices are insufficient as are Rydberg's conclusory statements that Dr. Widman refused to provide

11

confidential sessions.  Accordingly, Rydberg has failed to state a claim against Dr. Widman.

### d. Amanda Smith (Defendant No. 4)

Rydberg alleges that Registered Nurse Amanda Smith violated his right to confidentiality during psychiatric appointments.  Filing No. 1 at 15, 18.  The Complaint itself does not provide factual background for this allegation.  However, the grievance response to this issue explained that a staff member is present during telepsych appointments at the psychiatric provider's request for coordination of care purposes.  Filing No. 1 at 39.  It also states that if Rydberg wished to address a question privately, he could request a private segment.  *Id.* at 39.  Rydberg does not allege any specific act by Smith that harmed him, nor does he connect Smith's presence during appointments to any deprivation of medical care.  Rydberg's confidentiality concern seems to be based on a HIPAA violation rather than the Eighth Amendment, and HIPAA does not create a private right of action enforceable under § 1983.  *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action.").  Rydberg's allegations against Smith do not plausibly support a deliberate indifference claim.

### e. Dr. Robert Cunard (Defendant No. 5)

Rydberg alleges that Dr. Cunard repeatedly lied to him about his placement on a Hepatitis C treatment list, allowed high-dose ibuprofen to continue despite Rydberg's chronic care status, and prescribed Propranolol rather than a more appropriate RLS medication.  Filing No. 1 at 15, 17.  Rydberg further alleges that Dr. Cunard's failure to treat his Hepatitis C caused irreversible harm, *Id.* at 17, though Rydberg does not specify what that harm was.

The grievance materials attached to the Complaint suggest that the Hepatitis C treatment delay was a function of a waiting list administered by the medical director rather than Dr. Cunard's personal decision to deny care. *See Id.* at 33-34. While Rydberg's allegations about his treatment for hepatitis C are unclear, several courts in this circuit[2] and outside this circuit[3] have rejected claims where a prisoner requests immediate or specific treatment for Hepatitis C. Rydberg's allegation that Dr. Cunard affirmatively lied to him about his placement on the Hepatitis C treatment list, if credited, may be more than a disagreement about treatment. However, without additional factual support connecting Dr. Cunard's conduct to deliberate disregard of a known, serious risk, the Complaint does not state a plausible claim at this stage.

With respect to the ibuprofen, even if permitting continued use of ibuprofen was a mistake, an acknowledged mistake does not automatically transform the conduct into deliberate indifference. *See Jones*, 310 F.3d at 612 ("At best, [the plaintiff's] allegations

---

[2] *See, e.g., Doering v. Kelley*, No. 5:17CV00125, 2018 WL 1885506, at *5 (E.D. Ark. Mar. 27, 2018), *report and recommendation adopted*, No. 5:17-CV-125, 2018 WL 1875477 (E.D. Ark. Apr. 19, 2018), *aff'd*, 759 F. App'x 556 (8th Cir. 2019) (rejecting plaintiff's deliberate indifference claim because his request for pharmaceutical treatment where he did not meet a treatment threshold was a disagreement with treatment decision); *Briley v. Weber*, No. 12-CV-4169, 2014 WL 2592590, at *6–7 (D.S.D. June 10, 2014) (concluding defendants were not deliberately indifferent because plaintiff was not denied medical treatment, he was denied drug therapy treatment); *Carlson v. Weber*, No. 08-CV-4101, 2010 WL 3701359, at *6 (D.S.D. Sept. 14, 2010) (concluding defendants' treatment of plaintiff's Hepatitis C through monitoring, but not drug therapy, was not deliberately indifferent to Carlson's medical needs); *Pennington v. Kelley*, No. 08-CV-00018, 2009 WL 3010912, at *3-4 (E.D. Ark. Sept. 16, 2009) (plaintiff's assertion that anti-viral treatment should have started earlier was merely a disagreement with treatment decisions where plaintiff's Hepatitis C was regularly monitored in chronic care); *Tucker v. U.S. Dir. of Bureau of Prisons,* No. 09-CV-1862, 2010 WL 3033916 (D.Minn. Apr.21, 2010) (holding prison doctors' refusal to restart Hepatitis C drug therapy for inmate who started and voluntarily stopped drug therapy was not deliberate indifference).

[3] *See, e.g., Floyd v. Chief Med. Dir. of UTMB,* 210 Fed. App'x 387, 388–89 (5th Cir.2006) (holding prison officials were not deliberately indifferent to inmate's serious medical needs when they refused to treat his Hepatitis C with drug therapy); *Pickett v. Hubert,* 244 F.3d 136 (5th Cir.2000) (construing inmate's deliberate indifference to medical needs claim where drug therapy for Hepatitis C was not provided as a disagreement with the treatment); *Troutt v. Corr. Healthcare Mgmt., Inc.,* No. CIV–04–1570–C, 2006 WL 2372987 (W.D.Okla. Aug.14, 2006) (holding course of treatment for Hepatitis C that included monitoring condition but not drug therapy did not amount to deliberate indifference).

13

state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation."). Rydberg's allegation that Dr. Cunard prescribed Propranolol rather than a more targeted RLS medication is, similarly, a mistake or disagreement about the appropriate course of treatment. Accordingly, Rydberg has failed to state a claim against Dr. Cunard.

### f. Kristal Turpen (Defendant No. 6)

Rydberg alleges that Nurse Practitioner Kristal Turpen "had a part" in prescribing 1600 mg of ibuprofen, causing severe and excessive liver damage. Filing No. 1 at 15. This allegation is too bare to support a claim. Rydberg does not allege, for example, that Turpen was aware that the ibuprofen dosage posed a known and obvious serious risk to Rydberg's specific liver condition and prescribed it in disregard of that risk. The allegation that Turpen participated in a prescribing decision that later proved harmful to Rydberg, without more, falls short of pleading deliberate indifference. Accordingly, Rydberg has failed to state a claim against Nurse Practitioner Turpen.

### g. L. Bo (Defendant No. 7)

Rydberg alleges that Nurse Practitioner L. Bo "argued" that Rydberg could take Propixamate, a medication known to raise liver enzyme levels, which would have been harmful given Rydberg's cirrhosis. Id. at 15, 17. Rydberg acknowledges, however, that the medication was not ultimately administered after an investigation showed it was inappropriate, and L. Bo's recommendation was not followed. Id. at 15. Because Rydberg does not allege actual harm from L. Bo's recommendation, and because the

14

potential error was identified and corrected before it could cause injury, Rydberg has failed to state a claim against Nurse Practitioner L. Bo.

## C. Additional Claimed Violations

Rydberg's Complaint also references HIPAA, the ADA Amendments Act of 2008, and failure to follow NDCS policy and procedure. Filing No. 1 at 12-13. As noted above, HIPAA does not create a private right of action, nor is it enforceable under § 1983. Further, violations of prison policy and procedure, standing alone, do not establish a constitutional violation. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). As for the ADA, Rydberg has not alleged facts suggesting he was excluded from a prison program or service by reason of a disability, which is the predicate for an ADA claim in the prison context. *See* 42 U.S.C. § 12132; *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998); *Folkerts v. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013). Accordingly, these additional theories do not state claims upon which relief may be granted.

## IV.  MOTIONS TO APPOINT COUNSEL

Rydberg filed several Motions to Appoint Counsel. Filing No. 6, Filing No. 9, Filing No. 10. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of

15

conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time as, at this early stage of litigation, Rydberg appears able to adequately present his claims. The Court is, however, aware that this situation may change if Rydberg amends his complaint to state a claim and litigation progresses. As the Eighth Circuit Court of Appeals instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

## V. CONCLUSION

Rydberg's Complaint fails to state a claim upon which relief may be granted against any named Defendant. Defendants, in their official capacities, are immune from suit for damages in federal court under the Eleventh Amendment. Rydberg's allegations and the attached documentation suggest a pattern of ongoing medical attention which Rydberg understandably regards as inadequate, but the allegations do not suggest complete disregard of Rydberg's serious medical needs. Nevertheless, on its own motion, the Court will grant Rydberg leave to file an amended complaint. If Rydberg chooses to file an amended complaint, he must identify with specificity what each Defendant did or failed to do, explain what each Defendant knew about the serious risk to Rydberg's health at the time, and describe how each Defendant's actions or inactions caused him actual harm. Rydberg should be mindful that a difference of opinion about treatment, or

dissatisfaction with the pace or type of care, is not sufficient to establish deliberate indifference.

IT IS THEREFORE ORDERED:

1.    Plaintiff's claims against all Defendants in their official capacities are dismissed without leave to amend.

2.    Plaintiff shall otherwise have 30 days to file an amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.  In his amended complaint, Plaintiff must comply with federal pleading requirements. Plaintiff should be mindful to explain what the defendants did to him, when the defendants did it, and how the defendant's actions harmed him.

3.    In the event Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.  Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.    The Court reserves the right to conduct further review of Plaintiff's claims in the event he files an amended complaint.

5.    The Clerk of the Court is directed to set a pro se case management deadline using the following text: **April 23, 2026**—amended complaint due.

6.    Plaintiff's Motions to Appoint Counsel, Filing No. 6, Filing No. 9, and Filing No. 10, are denied without prejudice to reassertion.

17

7.    Plaintiff's Motion for Status, contained within Filing No. 9, is granted in accordance with this Memorandum and Order.

Dated this 24th day of March, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge